UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROSENBAUM CAPITAL, LLC, | ) | Case No. 07-0392 SC |
| Plaintiff, | ) ) | ORDER DENYING |
| v. | ) ) | DEFENDANTS' MOTION TO DISMISS |
| JOHN E. MCNULTY, TIM STEINKOPF AND SECURE COMPUTING CORPORATION, | ) ) ) | |
| Defendants. | ) ) ) | |

## I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss ("Motion") by the defendants John E. McNulty ("McNulty"), Tim Steinkopf ("Steinkopf") and Secure Computing Corporation ("Secure"), (collectively "Defendants"). See Docket No. 23. The plaintiff Rosenbaum Capital, LLC ("Plaintiff"), filed an Opposition, Defendants submitted a Reply, and Plaintiff, with leave from the Court, filed a Surreply. See Docket Nos. 28, 31, 37. For the following reasons, the Court DENIES Defendants' Motion.

## II. BACKGROUND

Secure is a software corporation that develops network security for large organizations. Mot. at 4. McNulty is Secure's President, Chairman, and CEO and Steinkopf is Senior Vice

President of Operations and CFO.  Id.  In January 2006, Secure acquired CyberGuard Corporation ("Cyberguard"), another network security corporation that offered similar products.  Id. at 5.  On May 4, 2006, Secure issued a press release reporting 2006 first quarter financial results and providing revenue and earnings guidance for the second quarter of the year.  Defendants' Request for Judicial Notice ("RJN"), Docket No. 24, Ex. C at 1.  In the press release, Secure projected that revenues for the second quarter of 2006 would be between $43 million and $45 million.  Id. at 4.  Additionally, the press release contained statements from Defendants McNulty and Steinkopf regarding the integration of CyberGuard and Secure.  McNulty was quoted as saying, "[w]e closed the largest acquisition in the company's history, and began the process of integrating Secure Computing's and CyberGuard's worldwide operations.  I am pleased to report that all phases of the integration process are either on target or ahead of plan."  Id. at 1.  In explaining Secure's results for the first quarter, Steinkopf was quoted stating: "Our ability to exceed our guidance is a direct reflection on the speed and good progress we were able to achieve in integrating CyberGuard into Secure Computing . . . ."  Id.  The press release also contained a warning that the revenue projections are forward-looking statements and, as such, are made pursuant to the safe harbor provision of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA").  Id. at 5.

On the same day that Secure issued the press release, Defendants McNulty and Steinkopf participated in a conference call

2

with investors and securities analysts.  Id. Ex. B at 2, 3.  This call also began with a warning statement in which Defendants stated: "During the course of this call . . ., we will make forward-looking statements . . . .  Such forward-looking statements are subject to the safe harbor provision . . . ."  Id. at 3.  During the call Defendants repeated the revenue and earnings projections for the second quarter and also made the following statements regarding the integration of Secure and CyberGuard:

-- "We exited Q1 functioning as a well-integrated single Company in all departments, both process-wise and culturally.  This is ahead of our integration plan.  And as a result, I believe the Company is well positioned for the quarters ahead."  Id. at 4.

-- "The Secure Computing and CyberGuard teams have done a remarkable job coming together as one.  Every part of the Company . . . [is] now integrated and under one management team."  Id. at 7.

On July 11, 2006, Secure issued a press release announcing that its revenue and earnings were lower than had been projected on May 4, 2006.  Id. Ex. D. at 1.  Secure noted that rather than reaching a revenue range of $43 million to $45 million, as previously anticipated, revenue for the second quarter was in fact $38.7 million.  Id. Ex. G at 1.  In a conference call that same day, Defendants McNulty and Steinkopf attributed part of the revenue shortfall to the failure to close two large deals by the end of the quarter.  Id. Ex. F at 2-3.  One of these transactions would have generated $2.55 million in revenue and the other was to

3

have yielded $1.3 million. Id. When analysts questioned McNulty and Steinkopf about whether the merger with CyberGuard had any detrimental impact on the second quarter results, McNulty initially said he did not think so while Steinkopf indicated that it might have had some impact. Id.

Plaintiff, an investor in Secure, subsequently filed suit in this Court, alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934. On July 2, 2007, Plaintiff filed a First Amended Complaint ("FAC"). See Docket No. 22. Plaintiff's claims are based primarily on the allegation that at the time Defendants represented that the integration between Secure and Cyberguard was proceeding well, they knew or should have known that the integration was in fact facing significant problems and these problems would negatively impact the financial projections for the second quarter. See FAC ¶¶ 40-42.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true."

1 Tellabs, Inc. v. Makor Issues & Rights, LTD., 127 S. Ct. 2499,
2 2509 (2007). All reasonable inferences are to be drawn in favor
3 of the plaintiff. Everest & Jennings, Inc. v. Am. Motorists Ins.
4 Co., 23 F.3d 226, 228 (9th Cir. 1994). Unreasonable inferences or
5 conclusory legal allegations cast in the form of factual
6 allegations, however, are insufficient to defeat a motion to
7 dismiss. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.
8 1981).

### B. **Private Securities Litigation Reform Act**

> Section 10(b) of the Securities Exchange Act of 1934 forbids the "use . . . in connection with the purchase or sale of any security . . ., [of] any manipulative or deceptive device or . . . in contravention of such rules and regulations as [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Tellabs, 127 S. Ct. at 2507 (citing 15 U.S.C. § 78j(b)) (alterations and brackets in original).

Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated under the authority of section 10(b), in turn, provides:

> It shall be unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

5

17 C.F.R. § 240.10b-5.

The enactment of the PSLRA in 1995 significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter. In re Daou Systems, Inc., 411 F.3d 1006, 1014 (9th Cir. 2005). Thus, under the PSLRA, a complaint alleging that the defendant made a false or misleading statement must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). In addition, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. § 78u-4(b)(2). In the Ninth Circuit this state-of-mind requirement demands that "the complaint . . . allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." Daou Sys., 411 F.3d at 1015.

In addition to the heightened PSLRA pleading standards, "[i]t is well established that claims brought under Rule 10b-5 and section 10(b) must meet the particularity requirements of Federal Rule of Civil Procedure 9(b)." Id. at 1014. Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The basic elements of a Rule 10b-5 claim include the following: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a

security, (4) transaction and loss causation, and (5) economic loss. <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 341 (2005).

**IV.  DISCUSSION**

Defendants argue that Plaintiff's Complaint should be dismissed for three reasons: (1) the allegedly false and misleading statements are statutorily protected by the safe harbor provision of the PSLRA; (2) Plaintiff has failed to plead scienter and falsity with the requisite factual particularity; and (3) the confidential sources upon which Plaintiff bases his factual allegations are, as a matter of law, insufficient.

**A.  Request for Judicial Notice**

As a threshold matter, the Court addresses Defendants' request that the Court take judicial notice of various documents. Federal Rule of Evidence 201 permits a court to take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  When ruling on a 12(b)(6) motion to dismiss a § 10(b) action, courts must consider the complaint in its entirety, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  <u>Tellabs</u>, 127 S. Ct. at 2509. Where a plaintiff fails to attach to the complaint the documents upon which the complaint is premised, a defendant may attach such documents in order to show that they do not support the plaintiff's claim.  <u>In Re Pac. Gateway Exch., Inc.</u>, 169 F. Supp. 2d 1160, 1164 (N.D. Cal. 2001).  In addition, under the

incorporation by reference doctrine, a court may, on a Rule 12(b)(6) motion, consider documents whose contents are alleged in a complaint but which are not physically attached to the pleading. Tellabs, 127 S. Ct. at 2509. Finally, a court may take judicial notice of public filings, such as those made with the SEC. Dreiling v. Am. Exp. Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006).

In the present case, all except one of the press releases and conference-call transcripts that Defendants seek to have judicially noticed are referenced in the Plaintiff's Amended Complaint. These documents are therefore appropriate for judicial notice. The exception is a conference-call transcript of Secure's August 18, 2005, conference call. This transcript, however, is publicly available and was disclosed to the market, and therefore is appropriate for judicial notice. See In re Copper Mountain, 311 F. Supp. 2d 857, 864 (N.D. Cal. 2004). The remaining documents Defendants seek to have judicially noticed are all SEC filings. The Court therefore GRANTS Defendants' request and takes judicial notice of Exhibits A1-8 and B1-5.

**B.   Safe Harbor Provision of PSLRA**

The safe harbor provision of the PSLRA provides that a defendant shall not be liable with respect to any forward-looking statement if:

> (A) The forward-looking statement is-
> (i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or

8

```
                           (ii) immaterial; or
            (B)  the plaintiff fails to prove that
                 the forward-looking statement-
                      (i) if made by a natural person,
                          was made with actual knowledge
                          by that person that the
                          statement was false or
                          misleading . . . .
```

15 U.S.C. § 78u-5(c)(1). A "forward-looking statement" is defined, in relevant part, as "a statement containing a projection of revenues, income (including income loss), earnings . . . or other financial items" or "a statement of future economic performance" or "any statement of the assumptions underlying or relating to any statement described [above]." Id. at § 78u-5(i)(1).

The first issue for the Court is whether the statements at issue fall within the definition of "forward-looking." Regarding Defendants' statements about the integration of CyberGuard and Secure, it is clear that they are not forward looking. Defendants, for example, stated the following: "We exited Q1 functioning as a well integrated single Company in all departments, both process wise and culturally. This is ahead of the integration plan." Compl. ¶ 20. This statement described events that had already occurred and conditions that were supposedly already in existence. This statement thus falls outside of the statutory definitions of "forward-looking." See 15 U.S.C. § 78u-5(i)(1). The statements regarding the condition of the integration are not protected by the safe harbor provision of the PSLRA.

Regarding Defendants' statements detailing revenue and

earnings projections, the Court agrees with Defendants that such statements fall within the statutory definition for "forward-looking." In addition, it is undisputed that these statements were made in conjunction with cautionary statements. Plaintiff does not dispute that Defendants included cautionary statements in both their conference calls with analysts and their press releases. See RJN Ex. B. at 3, Ex. C at 5. Furthermore, the press release cross-referenced risk disclosures included in Defendants' 2005 Form 10-K and other SEC filings.[1] Id. Defendants point to language in the 2005 Form 10-K that states: "We may be unable to integrate our operations successfully and realize all of the anticipated benefits of the merger with CyberGuard Corporation." Id. Ex. J at 13.

Defendants fail to recognize, however, that the PSLRA requires "meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i) (emphasis added). Another district court in California has stated the following:

> If the forward-looking statement is made with actual knowledge that it is false or misleading, the accompanying cautionary language can only be meaningful if it either states the belief of the speaker that it is false or misleading, or, at the very least, clearly articulates the reasons why it is false or misleading.

In re Seebeyond Tech. Corp. Sec. Litig., 266 F. Supp. 2d 1150,

---

[1] See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1133 (9th Cir. 2004) (holding that the PSLRA "provides that for forward-looking oral statements . . . the safe harbor" applies if cautionary statements are "'contained in a readily available written document'") (citing 15 U.S.C. § 78u-5(c)(2)(B)(i)).

10

1165 (C.D. Cal. 2003). The Court finds such reasoning persuasive. Plaintiff has alleged that Defendants' revenue and earning projections were based, in part, on a characterization of the integration that Defendants allegedly knew to be false. See Compl. ¶ 20. Defendants' warning statements lose much, if not all, of their value if, as Plaintiff has alleged, at the time Defendants publicly stated that they "exited [the first quarter] functioning as a well integrated single Company in all departments," Opp'n at 2, Defendants in fact knew that the integration was highly problematic. See In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392, 427 (S.D.N.Y. 2003) (stating that the "doctrine of bespeaks caution[2] provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away") (internal quotation marks omitted). Thus, the cautionary language used by Defendants is not "meaningful" and Defendants are not entitled to the safe harbor protection of 15 U.S.C. § 78u-5(c)(1)(A).

For the reasons stated above, the Court finds that Defendants' statements from the May 4, 2006, conference call and press release are not protected by the safe harbor provision of the PSLRA.

**C.   Factual Particularity and Confidential Sources**

Defendants argue that because the only evidence Plaintiff has

---

[2] "The PSLRA created a statutory version of [the bespeaks caution] doctrine by providing a safe harbor for forward-looking statements identified as such, which are accompanied by meaningful cautionary statements." Clorox, 353 F.3d at 1132.

11

submitted comes from five unnamed confidential sources, Plaintiff has failed to present the particularized allegations of fact required for a Rule 10b-5 claim.  Regarding confidential sources, the Ninth Circuit has stated that "[n]aming sources is unnecessary so long as the sources are described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged and the complaint contains adequate corroborating details."  Daou Sys., 411 F.3d at 1015 (internal citations omitted).

In the present case, Plaintiff has provided sufficient particularity regarding the confidential sources.  For example, Plaintiff has stated that Confidential Source # 1 was Director of Administration as an executive at CyberGuard and Secure.  FAC ¶ 43.  In this capacity, Confidential Source # 1 was responsible for order processing, forecasting sales for the fiscal quarter, implementing methods to meet revenue goals, and organizing the maintenance department in customer support.  Id. ¶ 44.  In addition, during at least part of the class period, Confidential Source # 1 was allegedly working under and reporting to Secure's Vice President of Production, who was responsible for supervising aspects of the integration of Secure and CyberGuard.

Plaintiff's other four confidential sources are also described with similar particularity.  See, e.g., FAC ¶ 57 (alleging that "Confidential Source No. 2 served as the Global Original Equipment Manager ("OEM") Account Manager . . . at Secure from 2001 until 2006.  The Account Manager reported to Chris Peterson, the VP of OEM and Channel Sales for Secure, who reported

directly to Defendant McNulty."). In addition, the confidential sources, when combined with Defendants' statements and press releases, provide "adequate corroborating details." Daou, 411 F.3d at 1015. Thus, in light of the specificity of Plaintiff's descriptions of its confidential witnesses, Plaintiff "has sufficiently met the PSLRA's requirements for confidential witnesses." Id.

Defendants argue that the Daou standard for confidential sources is no longer valid because of the heightened PSLRA pleading standard recently articulated by the Supreme Court in Tellabs. As discussed above, the Court in Tellabs held that in pleading the "strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), a "complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 127 S. Ct. at 2510. Thus, Defendants argue, confidential sources, by definition, could not give rise to a cogent and compelling inference of scienter.

Defendants cite a post-Tellabs, Seventh Circuit opinion in support of their argument. In Higginbotham v. Baxter International, Inc., 495 F.3d 753 (7th Cir. 2007), the court stated: "One upshot of the approach that Tellabs announced is that we must discount allegations that the complaint attributes to five confidential witnesses . . . . It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences." Id.

13

at 756-57.

The Ninth Circuit has not yet spoken to the issue of whether confidential sources, if described with the requisite particularity, may give rise to the cogent and compelling inference of scienter required by Tellabs. Without guidance stating otherwise, this Court is unwilling to abandon the binding Ninth Circuit precedent of Daou for the reasoning articulated by the Seventh Circuit in Higginbotham.

Such a decision is supported by the only other Circuit besides the Seventh to address the post-Tellabs treatment of confidential sources. In Central Laborers' Pension Fund v. Integrated Electrical Services Inc., 497 F.3d 546 (5th Cir. 2007), the Fifth Circuit did not read Tellabs to presumptively preclude confidential sources. See id. at 552 (stating "[c]onfidential source statements are a permissible basis on which to make an inference of scienter"). Although the Fifth Circuit did not discuss Tellabs in its analysis of confidential sources, the court was clearly aware of the Tellabs decision as evidenced by numerous citations to Tellabs in its lengthy discussion of the PSLRA pleading standards. Id. at 551. Thus, Central Laborers' Pension Fund suggests that, contrary to the Seventh Circuit's conclusion, Tellabs does not presumptively prohibit confidential sources.

In the present action, the Court finds that the information provided by Plaintiff's confidential sources, in combination with Defendants' statements and press releases, presents sufficiently particularized allegations of fact as required for a Rule 10b-5 claim.

14

### D. Factual Allegations for Scienter and Falsity

Defendants also assert that Plaintiff's factual allegations regarding the alleged violation are insufficient, as a matter of law, to establish scienter and falsity. "As set out in § 21D(b)(2) of the PSLRA, plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" Tellabs, 127 S. Ct. at 2504 (citing 15 U.S.C. § 78u-4(b)(2)). In the Ninth Circuit, "the required state of mind is one of deliberate or conscious recklessness." No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 931 (9th Cir. 2003). The Court in Tellabs defined a "strong inference" as the following:

> [T]o determine whether a complaint's scienter allegations can survive a threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation: it must consider, not only inferences urged by the plaintiff . . ., but also competing inferences rationally drawn from the facts alleged. . . . To qualify as "strong" within the intendment of § 21D(b)(2), we hold, an inference of scienter must be more than merely plausible or reasonable--it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

Id. at 2504-05. Thus, a "complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 2510.

Defendants argue that Plaintiff's Complaint fails to create

15

1 this compelling inference of scienter and falsity.[3]  As discussed
2 in section B., <u>supra</u>, the Court is satisfied that the information
3 provided by Plaintiff's confidential sources, in combination with
4 Defendants' statements and press releases, presents the
5 sufficiently particularized allegations of fact required for a
6 Rule 10b-5 claim.  Contrary to Defendants' argument that "the
7 facts alleged in the Complaint compel the conclusion that the
8 second quarter guidance was reasonable and well-founded when
9 made," Reply at 8, Plaintiff's allegations are commensurate with
10 the pleading requirements for the PSLRA and Federal Rule of Civil
11 Procedure 9(b).  In short, Plaintiff has alleged that Defendants
12 knew of the problems with the integration yet still stated, in the
13 May 4 press release, that the integration was going well and that
14 its success would contribute to increased revenue.  If these
15 factual allegations are accepted as true, then Plaintiff has
16 sufficiently pleaded violations of the Securities Exchange Act.
17 Plaintiff has presented evidence, in the form of confidential
18 sources, that indicates that Defendants knew that the integration
19 was not proceeding smoothly.  Defendants' statements in the press
20 release and during the conference call directly conflict with what
21 the confidential sources have stated.  The totality of this
22 evidence, combined with the fact that Secure missed its revenue
23 projections, gives rise to a cogent and compelling inference of
24 scienter.

---

[3] The dual pleading requirements of falsity and scienter may be incorporated "into a single inquiry, because falsity and scienter are generally inferred from the same set of facts." <u>In re Read-Rite Corp.</u>, 335 F.3d 843, 846 (9th Cir. 2003).

16

### E. Two Missed Deals

Finally, Defendants make much of the fact that the missed revenue projections can largely be attributed to two missed deals at the end of the second quarter. Defendants argue that these two missed deals account for all of the discrepancy between the revenue projections of the May 4 press release and the actual second quarter revenue. As noted above, the projected revenue was $43 million to $45 million while the actual revenue was $38.7 million. According to Defendants, the two missed deals accounted for total lost revenue of $3.85 million in the second quarter. Thus, as Defendants argue, had these two deals gone through as planned, the revenue for the second quarter would have been $42.55 million ($38.7 million plus $3.85 million), just shy of the $43 million low end of the projected revenue range.

Under Tellabs, a court must look not only to the inference urged by the plaintiff but also to any other inferences a reasonable person could draw from the factual allegations. See Tellabs, 127 S. Ct. at 2510 (stating that a "complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged").

Defendants argue that because the two missed deals account for much of the revenue shortfall, one could just as easily infer from Plaintiff's allegations that the problems with the integration had little or nothing to do with Secure's failure to hit the projected revenue range. By Defendants' own admissions, however, even if both deals had gone through, Secure still would

17

have fallen short of the low end of the projected revenue range. Thus, something in addition to these deals caused the revenue shortcomings. Whether problems with the integration was the cause of the missed earnings is, at this stage, far from clear. What is clear, however, is that Plaintiff has presented sufficiently particularized allegations regarding Defendants' knowledge of Secure's integration and its potential impact on revenue projections.

**V. CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: March 4, 2008

_____
UNITED STATES DISTRICT JUDGE